UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ELVIS PRESLEY ENTERPRISES, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| INTERNATIONAL GAMING TECHNOLOGY, | § § § | JURY TRIAL DEMANDED |
| *Defendant*. | § § § | |

# COMPLAINT

Elvis Presley Enterprises, Inc. files this complaint against International Gaming Technology alleging as follows:

## PARTIES

1. Plaintiff, Elvis Presley Enterprises, Inc. ("EPE") is a Tennessee corporation having its principal place of business in Memphis, Tennessee.

2. Defendant, International Gaming Technology ("IGT"), is a Nevada corporation having its principal place of business in Reno, Nevada.

## NATURE OF ACTION AND JURISDICTION

3. This is a breach of contract and intellectual property infringement action arising from IGT's unlicensed and unauthorized use of EPE's intellectual property with respect to the marketing, advertising, and sale of Elvis Presley-themed online and mobile slot games

(hereinafter defined as "Elvis-themed Online Slot Games") following termination of the parties' license agreement.

4. This Court has subject matter jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code §§ 1331 and 1338, and supplemental jurisdiction over EPE's claims under state law pursuant to 28 U.S.C. § 1367(a).

5. The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Accordingly, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6. IGT does business in this District and a substantial part of the events giving rise to the acts complained of herein occurred in this District. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391(b). In addition, IGT consented to and waived any objection to venue in this judicial district, pursuant to the terms of the license agreement referenced below.

7. This Court has personal jurisdiction over IGT pursuant to Tenn. Code Ann. § 20-2-214. IGT maintains one or more websites that are accessible to Tennessee residents where IGT's goods or services are made available to Tennessee residents. IGT has committed a tortious act within Tennessee by wrongfully appropriating EPE's property so as to cause injury to EPE. In addition, IGT consented to the exercise of personal jurisdiction over it by this court, and it waived any objection to jurisdiction pursuant to the terms of the license agreement referenced below.

## **FACTS**

I. **EPE's PROPERTY**

8. Elvis Presley was a world famous entertainer, and his career is without parallel in the entertainment industry.

9. Elvis Presley was aware of his fame and sought to capitalize on it during his lifetime.

10. He and his business advisors entered into agreements granting commercial licenses throughout the world to allow others to use his name and likeness, trademarks, and other intellectual property in connection with the marketing and sale of numerous consumer items.

11. As early as 1956, Elvis Presley's name and likeness could be found on a variety of merchandise.

12. Elvis Presley died on August 16, 1977. The Estate of Elvis Presley was created by the admission to probate of the Last Will and Testament of Elvis A. Presley ("Will") in the Probate Court of Shelby County, Tennessee, U.S.A., on August 22, 1977. The co-executors of the Estate of Elvis Presley incorporated EPE as a Tennessee corporation on February 26, 1981. Pursuant to the terms of the Will, the Elvis Presley Residuary Trust was created under Item IV of the Will, and Lisa Marie Presley was the sole beneficiary of the Elvis Presley Residuary Trust. The co-executors and co-trustees of the Will and the Elvis Presley Residuary Trust transferred and assigned all right, title and interest in and to the name, likeness and image of Elvis Presley and trademarks related to Elvis Presley to EPE by an assignment dated as of September 18, 1981, and recorded with the United States Patent and Trademark Office on

February 10, 1984.

13. Since its incorporation, EPE has been involved in a worldwide product licensing program, with products featuring Elvis Presley's name, image and likeness in every major category. In connection with the foregoing, EPE has continuously used the marks, ELVIS and ELVIS PRESLEY (and derivations of these marks), to identify certain "official" goods and services offered by it and its licensees. EPE and its affiliates also own and license numerous copyrighted works including music, audiovisual works and photographs in connection with "official" goods and services offered by it and its licensees.

14. One category of licensed products that EPE licenses Elvis Presley intellectual property is gaming and gambling products, such as slot machines and online slot games.

15. EPE is the owner of various trademark registrations and applications worldwide covering the categories of gaming machines, on-line gaming, and video lottery terminals, including, without limitation, the mark ELVIS, registered with the United States Patent and Trademark Number on March 28, 2000, and issued Reg. No. 2335947 for Slot Machines.

16. EPE's trademarks constitute a family of marks. Many of EPE's trademarks are used and promoted together, and promoted with other indicia and intellectual property rights associated with Elvis Presley, and are used on or in connection with related or complementary goods and services. When used with such goods and services, relevant consumers recognize and rely upon EPE's trademarks as an indicator of origin.

17. EPE has invested many millions of dollars spanning over three decades in advertising and promoting its intellectual property and the goods and services sold utilizing such property. The result of this extensive promoting and advertising is that the purchasing public in

4

this District and elsewhere in the United States and the world has come to know, rely upon, and recognize the goods and services of EPE and its licensees by such marks. EPE has established valuable goodwill in its intellectual property.

18. Through EPE's extensive use and promotion of its EPE trademarks, these marks have become famous and consumers in this District and elsewhere in the United States and the world have come to recognize the marks as such, and to associate the marks uniquely with EPE.

19. In addition to its extensive common-law rights and specific rights to trademarks for gaming, EPE owns numerous other federal trademark registrations for ELVIS and ELVIS PRESLEY in various categories for a wide array of goods and services.

20. EPE has actively policed and protected its intellectual property, and it has on numerous occasions taken action against others who used or attempted to trade upon the EPE's rights in and to the Elvis Presley trademarks and other intellectual property associated with Elvis Presley. Because of these actions, EPE's use of its trademarks and other intellectual property has been substantially exclusive.

## II. IGT's Unauthorized Use of EPE's PROPERTY

21. IGT is a Nevada based company specializing in the design, development, manufacturing, sales and distribution of gaming machines and network system products, as well as online and mobile gaming products and social gaming. Its annual revenue is almost $2 billion, and it is listed on the S&P 500.

22. EPE and IGT had a business relationship lasting over fifteen (15) years, whereby IGT licensed intellectual property associated with Elvis Presley for use in a variety of gaming machines and more recently on-line slot games. The first IGT Elvis-themed slot machine was

released in November of 1998. The Elvis slot machine combined the famous Elvis trademarks with audiovisual clips of Elvis Presley performing and music. It was one of the first slot machines marked by people lining up to play and spectators gathering around to watch, not just the jackpot winners, but the live performance clips, which stood out on the casino floor.

23. On April 1, 2008, IGT and EPE entered into the latest agreement between them, which agreement expanded IGT's rights to include not just physical slot machines but also online games, which was an emerging sector of the gaming marketplace.

24. The license agreement, which was later amended, expired on March 26, 2013 (*See Exhibit A*).

25. The agreement specifically provided that after expiration of the license agreement, IGT could continue to make available for a period of time certain gaming products, such as slot machines and other gaming products with physical hardware, that were previously placed into commercial use during the term of the agreement. The rationale behind such post-term extension was twofold, first that removing such games immediately from the casino floor is labor intensive for the game manufacturer and disruptive for the casinos, and second, that certain slot machines with progressive jackpots were subject to regulatory approval and needed additional time post-term to remain on the casino floor. Online games were not included in such permitted exception, as the same considerations do not apply (See Section 5(a) of the license agreement).

26. Subsequent to the expiration of the license agreement, notwithstanding EPE's insistence that the Elvis-themed Online Slot Games be discontinued and removed from IGT's servers, IGT refused to do so, and therefore IGT continues to use EPE's intellectual property

6

without permission in connection with online gaming (*See Exhibit B*).

27. After protracted conversations yielded no movement, on September 20, 2013, EPE sent a formal cease and desist letter to representatives of IGT asserting its objection to IGT's continued use of EPE's intellectual property in connection with online gaming and demanding that IGT cease all use of EPE's intellectual property in connection with online gaming. As of the date herewith, IGT has not taken any action to remove the Elvis-themed Online Slot Games from IGT's servers or, if applicable, any third party servers where such games are sublicensed.

### III. Willful Nature of IGT's Wrongful Acts

28. Before the expiration of the parties' license agreement, the parties to this action engaged in negotiations, without success, regarding a new or amended license agreement.

29. Upon information and belief, after the expiration of the license agreement, IGT became aware that one of its largest competitors, WMS Gaming, would be granted the exclusive license by EPE in connection with gaming machines and online gaming. In a deliberate effort to impede its competitor from succeeding within the relevant market, IGT willfully continued to offer Elvis-themed Online Slot Games after the expiration of its right to do so via the license agreement. IGT's intention was to unlawfully compete and cause disruption and confusion in the marketplace for IGT's competitor which is now EPE's current exclusive licensee.

30. IGT's acts complained of herein have been malicious, fraudulent, deliberate, willful, intentional, and in bad faith, with full knowledge of and in conscious disregard of EPE's rights. In view of the egregious nature of IGT's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## IV. Effect of IGT's Activities on EPE and the Consuming Public

31. IGT's unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games is likely to cause confusion, mistake, or to deceive customers and potential customers of EPE in this District and elsewhere in the United States as to some affiliation, connection, or association of IGT's business with EPE, or as to the origin, sponsorship, or approval of IGT's goods or services by EPE.

32. IGT's continued and unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games falsely indicates to the purchasing public that IGT, its business, and its services are affiliated, connected, or associated with EPE, or are sponsored, endorsed, or approved by EPE, or are in some manner related to EPE.

33. IGT's continued and unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games, including its common-law and federally registered trademarks, falsely designates the origin of IGT's goods or services, and falsely or misleadingly describes and represents facts with respect to IGT and its goods or services.

34. IGT's unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games diminishes the value of EPE's intellectual property.

35. IGT's continued use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games leads consumers to think that they are still connected with EPE when they are not.  A strong risk of consumer confusion arises

when a terminated licensee continues to use the former licensor's property. Consumers are likely to believe that EPE endorses IGT's goods and services and as such, are likely to assume that they are affiliated. Any shortcomings of IGT will be immediately attributed to EPE.

36. IGT's unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games removes from EPE the ability to control the nature and quality of goods and services provided under its marks, and places the valuable reputation and goodwill of EPE in the hands of IGT, over whom EPE has no control.

37. As a result of IGT's unauthorized use of EPE's intellectual property in connection with the continued exploitation of Elvis-themed Online Slot Games, IGT is being unjustly enriched at the expense of EPE and its current exclusive gaming licensee, WMS Gaming.

38. Unless these unfair and deceptive practices by IGT are restrained by this Court, they will persist, and will continue to cause irreparable injury to EPE and to the public in this District and elsewhere in the United States, for which there is no adequate remedy at law.

## COUNT I: INFRINGEMENT OF REGISTERED MARKS

39. EPE repeats the above allegations as if fully set forth herein.

40. IGT's acts complained of herein constitute infringement of EPE's federally registered trademarks in violation of Section 32 of the Lanham Act, 15U.S.C. § 1114.

41. EPE has been damaged by IGT's acts of federal trademark infringement.

42. IGT's infringement has been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

## COUNT II:  VIOLATION  OF LANHAM ACT SECTION 43(a)

43. EPE repeats the above allegations as if fully set forth herein.

44. IGT's acts complained of herein constitute false designations of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. EPE has been damaged by IGT's acts of false designations of origin, false or misleading descriptions or representations of fact and unfair competition.

46. IGT's acts of false designations of origin, false or misleading descriptions or representations of fact and unfair competition have been and are willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

## COUNT III:  VIOLATION OF RIGHT OF PUBLICITY

47. EPE repeats the above allegations as if fully set forth herein.

48. EPE is the exclusive owner of all rights in and to the name, likeness and image of Elvis Presley.

49. Without EPE's consent, IGT has used the name and image of Elvis Presley after IGT no longer had permission and authority from EPE to make such use of EPE's property in connection with online games.

50. IGT's unauthorized use of the name, likeness and image of Elvis Presley violates EPE's common law rights of publicity as well as the rights provide EPE by virtue of Tennessee Code Ann. § 47-25-1101 to 47-25-1106 and Nevada Revised Statute 597.770-597.810.

51. IGT's actions have caused damage to EPE.

### COUNT IV: COMMON LAW UNFAIR COMPETITION

52. EPE repeats the above allegations as if fully set forth herein.

53. IGT's acts complained of herein constitute trademark infringement and unfair competition in violation of the common law of the State of Tennessee.

54. EPE has been damaged by IGT's acts of common law unfair competition.

### COUNT V: BREACH OF CONTRACT

55. EPE repeats the above allegations as if fully set forth herein.

56. IGT's acts complained of herein constitute breach of contract in that the license agreement required IGT to cease use of EPE's intellectual property in connection with online gaming as of the last day of the agreement..

57. EPE has been damaged by IGT's acts of breach of contract.

### COUNT VI: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

58. EPE repeats the above allegations as if fully set forth herein.

59. EPE has business relationship with WSM Gaming.

60. IGT has knowledge of that relationship.

61. IGT has sought to cause the breach or termination of the business relationship with improper motives and/or by improper means.

62. EPE has been damaged by IGT's acts of intentional interference with contractual relations.

# **PRAYER**

WHEREFORE, EPE requests the following relief:

a) Defendant IGT, its agents, servants, employees, attorneys, and all those persons in active concert or participation with them, be preliminarily and permanently enjoined from using the EPE's Property, including any element thereof, and any other mark confusingly similar thereto;

b) Defendant IGT, its agents, servants, employees, attorneys, and all those persons in active concert or participation with them, be required to immediately remove or otherwise eliminate all elements and instances of the EPE's Property that appear in any media source including IGT's websites and advertising, and promotional materials;

c) IGT be ordered to file with this Court and to serve upon EPE, within 30 days after the entry and service on IGT of an injunction, a report in writing and under oath setting forth in detail the manner and form in which IGT have complied with the injunction;

d) EPE recover all damages it has sustained as a result of IGT's infringement and unfair competition, and that said damages be trebled or in the alternative. punitive damages be awarded;

e) An accounting be directed to determine IGT's profits resulting from IGT's wrongful activities, and that such profits be paid over to EPE, increased as the Court finds to be just under the circumstances of this case;

f) EPE recover its reasonable and necessary attorney fees;

g) EPE recover its costs of this action and prejudgment and post-judgment

       interest; and

h)     EPE recover such other relief as the Court may find appropriate.

## JURY DEMAND

Under Fed. R. Civ. P. 38(b), EPE demands a trial by jury on all issues triable of right by a jury.

        Respectfully submitted,

        **GLANKLER BROWN, PLLC**

        By:   /s/ William R. Bradley, Jr.
            William R. Bradley, Jr. (#10911)

        6000 Poplar Avenue, Suite 400
        Memphis, Tennessee 38119-3955
        Telephone: (901) 525-1322
        Fax: (901) 525-2389
        bbradley@glankler.com

        *Attorney for Plaintiff Elvis Presley Enterprises, Inc.*